UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ERA FRANCHISE SYSTEMS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| RENAISSANCE REALTY OF DANVILLE LLC, an Illinois Corporation, TERRY COYLE, an Individual, and NATHAN A BYRAM, an Individual, | ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, ERA Franchise Systems LLC f/k/a ERA Franchise Systems, Inc. ("ERA"), for its Complaint against Defendants Renaissance Realty of Danville, LLC, f/d/b/a ERA Renaissance Realty ("Renaissance Realty"), Terry Coyle, and Nathan A Byram (collectively, "Defendants"), hereby states as follows:

## THE PARTIES

1.     Plaintiff ERA is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at One Campus Drive, Parsippany, New Jersey 07054.  ERA has a single member, Realogy Services Group LLC ("RSG"), which is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at One Campus Drive, Parsippany, New Jersey 07054.  RSG has a single member, Realogy Corporation ("Realogy"), which is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One Campus Drive, Parsippany, New Jersey 07054.  Based upon the above, ERA is a citizen of New Jersey and Delaware.

1

2.       Upon information and belief, Defendant Renaissance Realty is a limited liability corporation organized and existing under the laws of the State of Illinois with its principal place of business at 917 Walnut Street, Danville, Illinois 61832.

3.       Upon information and belief, Defendant Terry Coyle is an individual and resident of the State of Illinois. Terry Coyle is a citizen of the State of Illinois. Terry Coyle was or is the owner of Renaissance Realty and operates or operated a real estate brokerage under the business name "ERA Renaissance Realty."

4.       Upon information and belief, Defendant Nathan A Byram is an individual and resident of the State of Illinois. Nathan A Byram is a citizen of the State of Illinois. Nathan A Byram was or is the managing broker of Renaissance Realty and operates or operated a real estate brokerage under the business name "ERA Renaissance Realty Danville."

## JURISDICTION AND VENUE

5.       This action arises under the trademark laws of the United States, specifically 15 U.S.C. § 1051, *et seq*

6.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

7.       This Court has personal jurisdiction over Defendants since Defendants reside or otherwise regularly conduct business in the State of Illinois.

8.       Venue is proper in this Court pursuant to 28 USC § 1391(a)(2), because Defendants' principal place of business is in this District, and a substantial part of the events, acts or omissions giving rise to this lawsuit, including the delivery of the subject contracts, occurred within this District.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### The ERA Marks

9. ERA is one of the largest real estate brokerage franchise systems in the United States, and is widely known as a provider of real estate brokerage services.

10. ERA is the owner of various trademarks, service marks, designs, logos, colors, color patterns and business methods for use in the promotion of ERA services, products, programs and marketing, which are on the principal register of the United States Patent and Trademark Office (the "ERA Marks").

11. ERA has the exclusive right to license the use of various trade names and service marks.

12. ERA or its predecessors have continuously used each of the ERA Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

13. ERA has given notice to the public of the registration of the ERA Marks as provided in 15 U.S.C. § 1111.

14. ERA uses or has used the word "ERA," among others, as an abbreviation of its brand name.

15. Through its franchise system, ERA markets, promotes, and provides services to its real estate franchisees throughout the United States. In order to identify the origin of their real estate services, ERA allows its franchisees to utilize the ERA Marks and to promote the ERA brand name.

16. ERA has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to

cause consumers throughout the United States to recognize the ERA Marks as distinctly designating ERA real estate services as originating with ERA.

17. The value of the goodwill developed in the ERA Marks is not of precise monetary calculation, but because ERA is one of the largest real estate franchise systems in the United States and is widely known as a provider of real estate services, the value of ERA's goodwill is substantial.

18. The ERA Marks are among the most famous in the United States.

**The Franchise Agreement**

19. On December 20, 2004, Renaissance Realty entered into a ERA Real Estate Franchise Agreement ("Franchise Agreement") for the operation of ERA real estate brokerage office at 917 N. Walnut Street in Danville, Illinois 61832 (Franchise No. 009511-0001). (A copy of the Franchise Agreement is attached hereto as Exhibit A.)

20. Pursuant to Section 1.5 of the Franchise Agreement, Renaissance Realty was obligated to operate the ERA office for a period of ten (10) years.

21. Pursuant to Section 4 of the Franchise Agreement, Renaissance Realty was granted a non-exclusive right to use the ERA System (as defined in the franchise agreement) and the ERA Marks in connection with the Office. Renaissance Realty agreed to use the ERA Marks in connection with its ERA business and not for any other purpose.

22. Pursuant to Section 7 of the Franchise Agreement, Renaissance Realty agreed to pay to ERA, among other things, a franchise royalty fee equal to six percent (6%) of the gross revenues earned during the course of the Franchise Agreement ("Royalty Fees").

23. Pursuant to Section 8 of the Franchise Agreement, Renaissance Realty agreed to pay to ERA a monthly national advertising fund contribution equal to two percent (2%) of its

respective gross revenues, subject to minimum and maximum requirements ("NAF Contributions").

24. Pursuant to Section 11.2 of the Franchise Agreement, Renaissance Realty agreed to pay interest on past due Royalty Fees and NAF Contributions from the date due to the date paid at the lower rate of either the highest rate allowed by law or 18% per annum simple interest (1.5% per month).

25. Pursuant to Section 13 of the Franchise Agreement, Renaissance Realty agreed to allow ERA to review and audit its business records, bookkeeping and accounting records, sales and income tax records and returns, and other records to verify the gross revenues earned and reported to ERA and Royalty Fees, NAF Contributions and other fees due ERA.

26. In the event the Franchise Agreement was terminated early and while this action is pending, ERA is also entitled to liquidated damages pursuant to Section 16.7.2 of the Franchise Agreement. These damages shall be calculated as equal to the combined monthly average of all fees payable under the respective franchise agreement from the Commencement Date of the agreement through the date of early termination, multiplied by the number of months (or partial months) remaining in the term of the Franchise Agreement.

27. Pursuant to Sections 16.6 and 22.11 of the Franchise Agreement, Renaissance Realty agreed that, in the event an action was instituted in connection with the Franchise Agreement, the prevailing party in any proceeding would be entitled to recover its costs and expenses, including reasonable attorneys' fees, from the non-prevailing party.

28. Pursuant to Section 16 of the Franchise Agreement, Renaissance Realty acknowledged that ERA has no adequate remedy in the event that Renaissance Realty engaged in the unauthorized use of the ERA Marks and expressly agreed that ERA may obtain an injunction and/or a temporary restraining order to terminate such use.

5

29.     Pursuant to Section 20.1 of the Franchise Agreement, during the term of the Franchise Agreement until its expiration on December 19, 2014, Defendants agreed not to compete with ERA in the real estate brokerage business in any manner. Specifically, "neither you nor your Owners, officers, or your guarantors, or any of the respective spouses of the Owners, officers, guarantors, or Responsible Broker will, directly or indirectly, through ownership or otherwise, engage in any real estate brokerage business or related business without our advance written consent, unless that business is being conducted under an ERA Franchise Agreement."

### The Non-Compete Provision

30.     In conjunction with signing the Franchise Agreement, Coyle provided ERA with a personal guaranty of Renaissance Realty's obligations under the Franchise Agreement ("Guaranty"). The Guaranty was signed separately by Renaissance and is incorporated into the Franchise Agreement. (See Ex. A., pp. 38-39.)

31.     Pursuant to the terms of the Guaranty, Coyle guaranteed to ERA the prompt payment and performance of all obligations of Renaissance Realty under the Franchise Agreement.

32.     Further, pursuant to the terms of the Guaranty, Coyle specifically agreed to pay the costs, including attorneys' fees, incurred by ERA in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

### Notification of the Enforcement of the Non-Compete

33.     In or around October 2011, Defendants notified ERA that it would cease to operate as an ERA franchise real estate brokerage office on December 31, 2011.

34. In response to this notification, on November 15, 2011, ERA provided Defendants with options to mutually terminate their Franchise Agreement. (A copy of the November 15, 2011 letter is attached hereto as Exhibit B.)

35. The letter further advised Defendants that "ERA will regard any attempt to abandon the franchises business…as a unilateral material breach of contract…"

36. Defendants did not respond to the November 15, 2011 letter and continued to operate as an ERA franchise.

37. On August 21, 2012, Defendants notified ERA that it would unilaterally cease to do business on September 20, 2012 because they "were unable to do business." (A copy of the August 21, 2012 letter is attached as Exhibit C.)

38. In or around September 2012, Defendants purportedly stopped operating as an ERA brokerage office and begun working for or with the RE/MAX franchise system.

39. On October 26, 2012, ERA notified Renaissance Realty that operation of a RE/MAX was a violation of the Franchise Agreement and use of the ERA Marks while operating as a RE/MAX was a violation of the Lanham Act. (A copy of the October 26, 2012 letter is attached hereto as Exhibit D.)

40. On November 2, 2012, ERA again notified Renaissance Realty that it intended to pursue its rights and remedies for the still-ongoing violations of the Lanham Act and the violations of the non-compete provisions of the Franchise Agreement. (A copy of the November 2, 2012 letter is attached hereto as Exhibit E.)

**The Breaches of the Franchise Agreement, Non-Compete and Guaranty**

41. Defendants breached Sections 4 and 20 of the Franchise Agreement by: (a) improperly using the ERA Marks for the operation of a competing business and (b) by opening and operating a "Re/Max" real estate brokerage in or around September 2012.

7

42.     Defendants continue to use the ERA Marks while operating a competing "Re/Max" real estate brokerage in violation of the Franchise Agreement.

### Defendants' Unauthorized Use of the ERA Marks

43.     Pursuant to Sections 4 and 16.4 of the Franchise Agreement, Defendants are precluded from using the ERA Marks for the promotion of their new business, including but not limited to in connection with their Re/Max real estate brokerage office.

44.     Defendants continue to flagrantly use the ERA Marks to induce the public to use real estate services provided by their real estate brokerage office under the guise of a continuing association with ERA, notwithstanding the fact that they had no right to use the ERA Marks in this fashion.

45.     More specifically, Defendants have used the ERA Marks without authorization for real estate services through, among other things, displaying ERA Marks on numerous internet websites that associate them as a RE/MAX franchise.

46.     Defendants have continued to use the ERA Marks without authorization, despite receiving notification to cease and desist from this use.  Specifically, by letter dated October 26, 2012, ERA's counsel requested that Defendants cease and desist from this conduct.

### FIRST CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS
### (Trademark Infringement, 15 U.S.C. § 1114)

47.     ERA repeats and makes a part hereof each and every allegation set forth in Paragraphs 1 through 46 of the Complaint.

48.     This claim is for trademark infringement under the laws of the United States, Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

49.     As of September, 2012, Defendants are and were using the SIR Marks in an unauthorized manner in connection with a competing real estate brokerage business or otherwise.

Defendants were informed of this fact in an October 26, 2012 letter, attached hereto as <u>Exhibit D</u>. However, despite Defendants' agreement to not use ERA Marks in this manner and despite Defendants' actual knowledge that use of the ERA Marks in connection with a competing real estate brokerage business was not authorized, Defendants continued to use the ERA Marks in violation of ERA's exclusive rights in those marks.

50. Defendants marketed, promoted, and continued to market and promote real estate services for a competing real estate brokerage business through the unauthorized use of the registered ERA Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

51. Such actions constitute infringement of ERA's trademarks rights to the ERA Marks. Defendants' use of the ERA Marks is likely to cause confusion as to its source among consumers for these services given the identical look and sound of the mark used in connection with identical services.

52. Defendants have acted knowingly and willfully, with full knowledge of the likelihood of confusion as the sponsorship and/or confusion of their infringing use of the ERA Marks and with the intent to deceive consumers in order to trade off the promotional efforts and earned goodwill and reputation of ERA in the real estate industry while operating a competing real estate brokerage office. Defendants have acted in utter and knowing disregard for ERA's rights in using the ERA Marks.

53. By reason of the foregoing acts of trademark infringement, ERA has been monetarily injured in an amount not yet ascertained.

54. In addition, as a result of the acts of trademark infringement, ERA has suffered and will continue to suffer irreparable harm from the Defendants' marketing and sales in connection with their unauthorized use. ERA has no adequate remedy at law with respect to this

injury. Unless the acts of trademark infringement are enjoined by this Court, ERA will continue to suffer irreparable harm.

55. Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), such that ERA is entitled to an award of attorneys' fees and costs.

**SECOND CAUSE OF ACTION
AGAINST ALL DEFENDANTS**

(Breach of Contract: Franchise Agreement)

56. ERA repeats and makes a part hereof each and every allegation set forth in Paragraphs 1 through 55 of the Complaint.

57. As set forth above, ERA and Renaissance Realty entered into the Franchise Agreement whereby ERA agreed to provide Renaissance Realty with a non-exclusive license for its trademarks and marketing system, and Renaissance Realty agreed to certain monetary and non-monetary obligations as more fully set forth in the Agreement.

58. ERA has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Franchise Agreement.

59. Defendants have breached the Franchise Agreement by using the ERA Marks in operating a competing business.

60. Additionally, Defendants have breached the Franchise Agreement's non-compete covenant by working for or with a RE/MAX franchise system in their ERA office.

61. Pursuant to the terms of the Franchise Agreement, Defendant Terry Coyle and Defendant Nathan A Byram agreed, among other things, that during the term of the Franchise Agreement, they would not compete against ERA. Specifically, during the term of the Franchise Agreement, Terry Coyle as an Owner and Nathan A. Byram as an officer or Responsible Broker promised they would not, directly or indirectly, through ownership or otherwise, engage in any

real estate brokerage business or related business without ERA's advance written consent, unless that business is being conducted under an ERA Franchise Agreement.

62. Despite their obligation to do so, Defendants have failed to perform in accordance with the terms of the non-compete agreement and instead have opened, operated, owned, and/or managed a competing RE/MAX franchise at the same address as the approved location of the ERA Renaissance location.

63. As a result of Defendants' breaches of the Franchise Agreement, ERA has been damaged in an amount to be proven at trial based on the facts alleged herein, including but not limited to interest and costs. Since ERA has not yet chosen to terminate Renaissance Realty for its breaches of the Agreement, as it is entitled to do under the agreement, and Renaissance Realty' obligations to ERA continue after the filing of this action, ERA is entitled to any additional fees that become due under the Agreement until a judgment is rendered including but not limited to liquidated damages.

64. Pursuant to the Franchise Agreement, ERA is also entitled to the recovery of reasonable attorneys' fees and costs if it prevails in this action.

**THIRD CAUSE OF ACTION**
**AGAINST TERRY COYLE**

(Breach of Contract –Personal Guaranty)

65. ERA repeats and makes a part hereof each and every allegation contained in Paragraphs 1 through 64 of the Complaint.

66. Pursuant to the terms of the Personal Guaranty, Defendant Terry Coyle agreed, among other things, that upon a breach of the Franchise Agreement by Renaissance Realty, or any other agreements between the parties, he would immediately make each payment and perform all obligations required of Renaissance Realty under that agreement.

67. Despite his obligation to do so, Terry Coyle has failed to cause Renaissance Realty to perform its obligations under the Franchise Agreement, including but not limited to ceasing the use of the ERA Marks in conjunction with a RE/MAX franchise system operating in the same area as Renaissance Realty's ERA office.

68. Since ERA has not yet chosen to terminate Renaissance Realty for its breaches of the Agreement, as it is entitled to do under that agreement, Terry Coyle's obligations to ERA continue after the filing of this action, ERA is entitled to any additional fees that become due under the Agreement until a judgment is rendered including but not limited to liquidated damages.

69. Pursuant to the terms of the Guaranty, Terry Coyle is liable to ERA for all damages caused as a result of this or any breach of the Franchise Agreement.

## FOURTH CAUSE OF ACTION
## AGAINST RENAISSANCE REALTY

(Audit Demand/Accounting)

70. ERA repeats and makes a part hereof each and every allegation contained in Paragraphs 1 through 60 of the Complaint.

71. Pursuant to the Franchise Agreement, Renaissance Realty agreed, among other things, to pay certain fees to ERA including royalties and national advertising fees.

72. Pursuant to Section 13 of the Franchise Agreement, Renaissance Realty also agreed to allow ERA to review and audit Renaissance Realty's business records to verify the gross revenues of its offices, upon which its fees are based.

73. ERA is informed and believes that Renaissance Realty owes additional sums under the Franchise Agreement beyond the amount set forth above, based on, among other things, sales of real estate not reported but for which franchise fees are due and owing.

However, ERA is unable to ascertain the full amount owed by Renaissance Realty without an accounting or audit of Renaissance Realty's books and records. The additional amounts owed are within Renaissance Realty's knowledge as these amounts are based on transactions in which Renaissance Realty participated.

**FIFTH CAUSE OF ACTION**
**AGAINST RENAISSANCE REALTY**

(Unjust Enrichment)

74.   ERA repeats and makes a part hereof each and every allegation contained in Paragraphs 1 through 73 of the Complaint.

75.   During the course of the Franchise Agreement, ERA provided services to Renaissance Realty, which services included but were not limited to non-exclusive licenses to use ERA Marks, marketing system and other proprietary information and property. Renaissance Realty knew that these services were being provided by ERA and they accepted them and used them.

76.   Despite its obligation to do so, Renaissance Realty has failed to pay certain Royalty Fees, NAF Contributions and other fees to ERA due and owing under the Franchise Agreement.

77.   Renaissance Realty's failure to compensate ERA constitutes unjust enrichment and has damaged ERA in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, ERA Franchise Systems LLC respectfully prays for judgment in its favor and against Renaissance Realty of Danville, LLC, Terry Coyle, and Nathan A Byram, jointly and severally, as follows:

1.   Judgment in ERA's favor on all claims herein;

2. For a preliminary and permanent injunction enjoining Defendants and their agents, servants, employees, and all persons acting in concert with them from:

    (a) Using the ERA Marks in marketing, advertising or promotional materials, on the telephone, via the internet or otherwise, in connection with real estate services provided by a competing real estate franchise or other business,

    (b) Otherwise infringing the ERA Marks in a manner not agreed to per the Franchise Agreement; and

    (c) Operating, working for, and/or working with any competing real estate brokerage office, including but not limited to RE/MAX.

3. For an Order directing Defendants to: (a) remove all signs and billboards identifying themselves as a RE/MAX; (b) to contact all websites that contain any reference to Defendants being associated with any competing real estate brokerage office, including but not limited to RE/MAX.

4. Directing Defendants to issue corrective advertising, including newspaper advertising, and to notify customers and potential customers that Defendants are still an ERA franchise;

5. An accounting of profits and damages resulting from Defendants' trademark infringement, false designation of origin, trademark dilution, counterfeiting, and unfair competition, and trebling such damages under the trademark laws because of the knowing, intentional, willful, and wanton nature of Defendants' conduct;

6. On the breach of contract under the Franchise Agreement against Defendants, damages in an amount to be proven at trial based on the facts alleged herein;

7. On the breach of contract under the Guaranty against Terry Coyle, damages in an

14

amount to be proven at trial based on the facts alleged herein;

8.  For an Order requiring Renaissance Realty to submit to an audit within 15 days and to account to ERA for any and all revenue derived as a result of marketing, promoting, or selling real estate brokerage or ancillary services from the inception of the Franchise Agreement through the date of judgment herein, and awarding damages for additional sums due under the Franchise Agreement for sales of real estate not reported but for which Royalty Fees, NMF Contributions and other fees are due based on the Franchise Agreement;

9.  On the unjust enrichment claim, damages in an amount to be proven at trial;

10. An award of punitive damages for intentional and willful acts;

11. An award of interest, attorneys' fees, and costs; and

12. Such other and further relief as the Court deems proper.


Dated:  November 27, 2012            Plaintiff ERA Franchise Systems LLC


                                     By: /s/ Patrick F. Moran
                                         Patrick F. Moran

Patrick F. Moran
Gordon & Rees LLP
One North Franklin
Suite 800
Chicago, Illinois 60606
Tel:  312-565-1400
Fax:  312-565-6511

*Attorneys for ERA Franchise Systems LLC*